**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| MICHAEL SOUZA AND | ) | |
| ELIZABETH SOUZA | ) | |
| | ) | |
| VS. | ) | C.A. No.: 06-55ML |
| | ) | |
| DOMESTIC BANK | ) | |

**PLAINTIFFS' PRETRIAL MEMORANDUM**

______Now come the Plaintiffs in the above-entitled matter and submit the following appended hereto:

1. What Is Expected To Be Proven In Support Of The Claim, Indicating Each Witness To Testify With A Brief Summary Of His/Her Testimony And As To Whether That Witness Will Testify As An Expert.

______2. A Memorandum Of Supporting Law With Citations Of Authorities, Including All The Law Applicable To The Case With Emphasis On Special Legal Issues And Full Briefing Of All Pertinent Citations.

3. List Of Exhibits Intended To Be Offered At The Trial With Statements Of The Purpose For Which The Exhibit Is Offered; All Exhibits Pre-marked In Numerical Order.

4. Proposed Jury Instructions.

5. A Statement As To Probable Length Of Trial.

6. Any Additional Matter Which Will Aid The Court In The Disposition And/Or Hearing Of Said Action.

**1. What Is Expected To Be Proven In Support Of The Claim, Indicating Each Witness To Testify With A Brief Summary Of His/Her Testimony And As To Whether That Witness Will Testify As An Expert.**

Plaintiffs' Complaint is filed under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq.* (hereinafter "ECOA") which insures that financial institutions engaged in the extension of credit do so with fairness, impartiality and without discrimination on the basis of sex or marital status. Plaintiffs, subsequent to their filing a Chapter 13 Voluntary Petition in the United States Bankruptcy Court for the District of Rhode Island, received an unsolicited telemarketing

call from Defendant soliciting Plaintiffs to obtain a loan to refinance their real property. On November 25, 2003 Plaintiffs applied for said loan in writing.

Defendant informed Plaintiffs that it was very interested in proceeding with the loan. It conducted appraisals of Plaintiffs' property at Plaintiffs' expense and subsequently informed Plaintiffs that the loan was approved by Defendant and, furthermore, that the $275,000.00 appraised value was within the ratios of the loan to value that they would approve.

Defendant was aware that the purpose of the loan was to allow the Plaintiffs to "buy out" of their Chapter 13 Bankruptcy Plan. On December 22, 2003 Defendant informed Plaintiffs through their bankruptcy attorney that their application for the refinance of their property had been approved in the amount of $210,000.00. A day later, Plaintiffs filed a motion with the Bankruptcy Court for approval to enter into a mortgage refinance with Defendant and to use the proceeds to pay off their Chapter 13 Plan. On December 31, 2003 the Bankruptcy Court granted Plaintiffs' motion to borrow. Plaintiffs reasonably relied on Defendant's subsequent representations that a closing on the loan was imminent.

______On February 4, 2004, more than two months after the beginning of the loan process and more than a month after receiving a commitment letter, Defendant informed Plaintiffs over the telephone that it had had a change of heart and "did not feel comfortable" with the loan to value ratio.

On February 5, 2004 Defendant informed Plaintiff by way of a Statement of Credit Denial, Termination or Change that Plaintiffs' loan application had been rejected and, furthermore, that the rejection was based on delinquent credit obligations, garnishment, attachment, foreclosure, repossession or suit.

Plaintiffs allege in their Complaint that Defendant misrepresented the actual reasons for the denial of Plaintiffs' loan application in violation of the ECOA. Plaintiffs further allege that

Defendant's misrepresentation was done wantonly, maliciously, oppressively or in reckless disregard of the requirements of the law thus entitling Plaintiffs to the award of punitive damages. Finally, Plaintiffs allege that, as a result of Defendant's delay in providing the notice in the time frame mandated by 15 U.S.C. § 1691(d)(1), Plaintiffs were damaged in that their refinancing fell through, their bankruptcy case was converted to a Chapter 7 case and their home which they had hoped to keep had to be sold to prevent foreclosure.

Plaintiffs, Michael Souza and Elizabeth Souza will testify, as non-expert witnesses, to all of the above. Attorney Peter Dibiase will testify, also as a non-expert witness, as to his dealings with employees of Defendant Domestic Bank. Nathaniel Baker will be called to testify as a non-expert adverse witness relative to his involvement with the Souza loan transaction as described in his deposition testimony on December 20, 2006.

**2. A Memorandum Of Supporting Law With Citations Of Authorities, Including All The Law Applicable To The Case With Emphasis On Special Legal Issues And Full Briefing Of All Pertinent Citations.**

**I.** Plaintiffs allege that Defendant violated 15 U.S.C. § 1691(d)(1) which requires a creditor to notify a credit applicant within thirty days after receipt of a completed application for credit of its action on the application.

**II.** Plaintiffs also allege that Defendant violated 15 U.S.C. §§ 1691(d)(2) and (3) which requires that each credit applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor and that a statement of reasons meets the requirement only if it contains the specific reasons for the adverse action taken if Defendant's statement misrepresented the true reasons for the adverse action and that said misrepresentation was done wantonly, maliciously, oppressively or in reckless disregard of the requirements of the ECOA so as to entitle Plaintiffs to an award of punitive damages pursuant to 15 U.S.C. § 1691(e).

Plaintiffs' Complaint is based upon Defendant's violation of the Federal Statute which appears below. This is a strict liability statute! In Brothers v.First Leasing, 724 F.2d 789, (9th Circ. 1984), certiorari denied 105 S.Ct.121, 469 U.S. 832 L. Ed.2d 63 wherein it was held that the Court must construe literal language of the Equal Credit Opportunity Act in light of the clear, strong purpose evidenced by the law and adopt an interpretation that will serve to effectuate that purpose. This is a strict liability statute! The statute reads as follows:

**Title 15. Commerce and Trade**
**Chapter 41. Consumer Credit Protection**
**Subchapter IV. Equal Credit Opportunity**

**§ 1691. Scope of prohibition**

**(a) Activities constituting discrimination**

**It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction–**

**(1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract);**

**(2) because all or part of the applicant's income derives from any public assistance program; or**

**(3) because the applicant has in good faith exercised any right under this chapter.**

**(b) Activities not constituting discrimination**

**It shall not constitute discrimination for purposes of this subchapter for a creditor–**

**(1) to make any inquiry of marital status if such inquiry is for the purpose of ascertaining the creditor's rights and remedies applicable to the particular extension of credit and not to discriminate in a determination of credit-worthiness;**

**(2) to make an inquiry of the applicant's age or of whether the applicant's income derives from any public assistance program if such inquiry is for the purpose of determining the amount and probable continuance of in-**

**come levels, credit history, or other pertinent element of credit-worthiness as provided in regulations of the Board;**

**(3) to use any empirically derived credit system which considers age if such system is demonstrably and statistically sound in accordance with regulations of the Board, except that in the operation of such system the age of an elderly applicant may not be assigned a negative factor or value; or**

**(4) to make an inquiry or to consider the age of an elderly applicant when the age of such applicant is to be used by the creditor in the extension of credit in favor of such applicant.**

**(c) Additional activities not constituting discrimination**

**It is not a violation of this section for a creditor to refuse to extend credit offered pursuant to–**

**(1) any credit assistance program expressly authorized by law for and economically disadvantaged class of persons;**

**(2) any credit assistance program offered by a profit-making organization for its member or an economically disadvantaged class of persons; or**

**(3) any special purpose credit program offered by a profit-making organization to meet special social needs which meets standards prescribed in regulations by the Board;**

**if such refusal is required by or made pursuant to such program.**

**(d) Reason for adverse action; procedure applicable; "adverse action" defined**

**(1) Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.**

**(2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by–**

**(A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or**

**(B) giving written notification of adverse action which discloses (i)**

**the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.**

**(3) A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken.**

**(4) Where a creditor has been requested by a third party to make a specific extension of credit directly or indirectly to an applicant, the notification and statement of reasons required by this sub-section may be made directly by such creditor, or indirectly through the third party, provided in either case that the identity of the creditor is disclosed.**

**(5) The requirements of paragraph (2), (3), or (4) may be satisfied by verbal statements or notifications in the case of any creditor who did not act on more than one hundred and fifty applications during the calendar year preceding the calendar year in which the adverse action is taken, as determined under regulations of the Board.**

**(6) For purposes of this subsection, the term "adverse action" means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent of otherwise in default, or where such additional credit would exceed a previously established credit limit.**

**(e) Appraisals; copies of reports to applicants; costs**

**Each creditor shall promptly furnish an applicant, upon written re-quest by the applicant made within a reasonable period to time of the application, a copy of the appraisal report used in connection with the applicant's application for a loan that is or would have been secured by a lien on residential real property. The creditor may require the applicant to reimburse the creditor for the cost of the appraisal.**

Defendant having violated this statute, as described in Section I of this memorandum, Plaintiffs are entitled to their actual damages sustained and statutory (punitive damages).

15 U.S.C. § 1691e reads in relevant part as follows:

> **(a) Individual or class action for actual damages**
>
> **Any creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant acting either in an individual capacity or as a member of a class.**
>
> **(b) Recovery of punitive damages in individual and class action for actual damages; exemptions; maximum amount of punitive damages in individual actions; limitation on total recovery in class actions; factors determining amount of award**
>
> **Any creditor, other than a government or governmental subdivision or agency, who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $10,000, in addition to any actual damages provided in subsection (a) of this section, except that in the case of a class action the total recovery under this subsection shall not exceed the lesser of $500,000 or 1 per centum of the net worth of the creditor. In determining the amount of such damages in any frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.**

Plaintiffs are entitled to the award of reasonable attorney's fees if Plaintiff is awarded a favorable verdict. Owens vs. Magee Finance Service of Bogalusa, Inc. 476 F.Supp. 758 (E.D. La. 1979). That case held that as prevailing parties on claims of violation of the Equal Credit Opportunity Act, plaintiff borrowers were entitled to reasonable attorney's fees. Also, in Cherry vs. Amoco Oil Co., 490 F.Supp. 1026 (N.D. Ga. 1980) the Court held that it is not necessary for a plaintiff to prove actual damages to be entitled to punitive damages.

**3. List Of Exhibits Intended To Be Offered At The Trial With Statements Of The Purpose For Which The Exhibit Is Offered; All Exhibits Pre-marked In Numerical Order.**

1. Uniform Residential Loan Application

This document is being offered in evidence for the purpose of proving that Plaintiffs submitted a credit application which makes the cited federal statute applicable.

2. Letter of explanation from Plaintiffs to Dorothy Vieira dated November 26, 2003.

This documents is being offered in evidence to prove that Plaintiffs cooperated in every, way, shape and form with Defendant's request for information relative to Plaintiffs' consumer loan application.

3. Loan Processing Checklist

This document is being offered in evidence to prove Defendant's policy and procedure relative to consumer loan applications such as that of the Plaintiffs.

4. Invoice for Appraisal

This document is being offered in evidence to prove Plaintiffs' actual damages sustained as well as to prove that Plaintiffs cooperated with Defendant in every, way, shape and form relative to Plaintiffs' consumer loan application.

5. Report of Title Examination

This document is being offered in evidence to prove Defendant's policy and procedure relative to consumer loan applications such as that of the Plaintiffs.

6. Approval Letter

This document is being offered in evidence to prove that Plaintiffs' consumer loan application was complete and approved and that Defendant violated the Equal Credit Opportunity Act by failing to give a timely notification of the subsequent adverse action taken on Plaintiffs' consumer loan application and by intentionally and willfully misrepresenting the actual reasons for the denial of Plaintiffs' loan application.

7. Commitment Letter

This document is being offered in evidence to prove that Defendant violated the Equal Credit Opportunity Act by failing to give a timely notification of the adverse action taken on Plaintiffs' consumer loan application and by intentionally and willfully misrepresenting the

actual reasons for the denial of Plaintiffs' loan application.

8. Good Faith Estimate

This document is being offered in evidence to prove Defendant's policy and procedure relative to consumer loan applications such as that of the Plaintiffs.

9. Fannie Mae Underwriting Findings

This document is being offered in evidence to prove Defendant's policy and procedure relative to consumer loan applications such as that of the Plaintiffs.

10. Statement of Credit Denial, Termination, or Change

This document is being offered in evidence to prove that Defendant intentionally and willfully violated the Equal Credit Opportunity Act by failing to give a timely notice of the subsequent adverse action taken on Plaintiffs' consumer loan application and by the reasons for the denial of Plaintiff's consumer loan application.

11. Collateral Review Checklist

This document is being offered in evidence to prove Defendant's policy and procedure relative to consumer loan applications such as that of the Plaintiffs.

12. Deposition transcript of Edward Vescera from Plaintiffs' bankruptcy case

This document is being offered in evidence because Edward Vescera is an important witness in this matter, is no longer employed by Defendant. According to Defendant's Answers to Plaintiffs' interrogatories, his home address in unknown to Defendant.

**4. Proposed Jury Instructions.**

**Plaintiffs' Proposed Instruction No. 1**

The burden is on the Plaintiffs in a civil action such as this to prove every essential element of their claim by a preponderance of the evidence. Preponderance of the evidence is a quantitative concept. All of you have seen the blindfolded lady holding the scales of justice in

perfect balance. Preponderance of the evidence means that the Plaintiffs' evidence tilts that perfect balance ever so slightly in their favor.

**Plaintiffs' Proposed Instruction No. 2**

There are generally speaking two types of evidence from which a jury may properly find the truth as to the facts of the case. One is direct evidence, which is direct proof of a fact such as the testimony of an eye witness. The other is circumstantial evidence, which is the proof of a chain of circumstances pointing to the existence or nonexistence of certain facts. As a general rule, the law makes no distinction between the weight to be given to direct and circumstantial evidence. It is up to your to decide how much weight to give to any evidence.

Exhibits are direct forms of evidence. Arguments and statements of counsel are not evidence, unless the attorneys enter into a stipulation in which case you can accept that stipulation as a fact in the case.

**Plaintiffs' Proposed Instruction No. 3**

You as jurors are the sold judges of the credibility of the witnesses and the weight that their testimony deserves. You may be guided by the appearance and conduct of the witnesses or by the manner in which the witness testifies, or by the character of the testimony given. You should carefully scrutinize all the testimony, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness' intelligence, motive, and state of mind and demeanor and manner while on the witness stand. Consider the witness' ability to observe the matter to which the witness testifies, and whether the witness impresses you as having an accurate recollection of these matters. Consider, also, any relation each witness may bear to each side of the case, the manner in which each witness might be affected by your verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of the discrepancy, always consider whether it pertains to matters of importance or an unimportant detail and whether the discrepancy results from innocent error or intentional falsehood. After making your own judgment, you will give the testimony of each witness such weight, if any, as you think it deserves.

On occasion it was suggested that a witness may have given a prior inconsistent statement when the witness' deposition was taken. If such is shown, it could be considered for purposes of impeaching the witness' testimony. Before discounting a witness' testimony for this reason you ought to consider whether the inconsistency was of a minor, insignificant nature, or something material to the case.

**Plaintiffs' Proposed Instruction No. 4**

The Plaintiffs, Michael Souza and Elizabeth Souza, are suing the Defendant, Domestic Bank for damage alleging that the Defendant violated the Equal Credit Opportunity Act, 15 U.S.C. Section 1691 (d)(1) which requires a creditor to notify a credit applicant within thirty (30) days after receipt of a completed application for credit of its action on the application. Plaintiffs also allege that Defendant violated 15 U.S.C. Sections 1691(d)(2) and (3) which requires that each credit applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor and that a statement of reasons meets the requirement only if it contains the specific reasons for the adverse action Plaintiffs allege that Defendant's misrepresentation was done wantonly, maliciously, oppressively or in reckless disregard of the requirements of the Equal Credit Opportunity Act so as to entitle Plaintiffs to an

award of punitive damages pursuant to 15 U.S.C. Section 1691(e). The Defendant denies that it violated any provisions of the Equal Credit Opportunity Act.

To establish their claim the Plaintiffs must prove that the Defendant violated the above provisions. Your verdict will be for the Defendant is the Plaintiffs fail to do so by a preponderance of the evidence.

**Plaintiffs' Proposed Instruction No. 5**

The Equal Credit Opportunity Act is a strict liability statute, meaning that it imposes liability for a violation of its provisions without requiring a showing of intent to do so. Thus, Defendant Domestic Bank is liable to Plaintiffs for damages if Plaintiffs prove that Defendant violated the law even though it may not have intended to do so.

**Plaintiffs' Proposed Instruction No. 6**

If you find that Plaintiffs have proven by a preponderance of the evidence that Defendant violated that Equal Credit Opportunity Act, Plaintiffs are entitled to statutory damages up to $10,000.00 even if Plaintiffs sustained no actual damages. You may also award Plaintiffs their actual damages, if any, that are proven by a preponderance of the evidence.

If Defendant failed to comply with any requirement imposed under this law it is liable to the Plaintiffs for any actual damages sustained by them. Also, if Defendant failed to comply with any requirement imposed under this law, it is liable to the Plaintiffs for punitive damages in an amount not greater than $10,000, in addition to any actual damages. In determining the amount of such damages in any frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

**Plaintiffs' Proposed Instruction No. 7**

I you find that Plaintiffs have proven by a preponderance of the evidence that Defendant,

in violating the Equal Credit Opportunity Act, acted wantonly, maliciously, oppressively or in reckless disregard of the requirements of the Act, you may award punitive damages to Plaintiffs. Malice or evil motive need not be found in order to award punitive damages, but Defendant's violation must have been willful. The term "willful" as used in these instructions means that the Defendant knowingly and intentionally committed an act in conscious disregard of the rights of Plaintiffs and not by mistake or accident or other innocent reason.

Punitive damages may be awarded for the purpose of punishing Defendant for the wrong done. Punitive damages also serve as an example to others not to engage in such conduct.

**5. A Statement As To Probable Length Of Trial.**

The probable length of trial is three (3) days.

**6. Any Additional Matter Which Will Aid The Court In The Disposition And/Or Hearing Of Said Action.**

____________None.

MICHAEL J. SOUZA AND
ELIZABETH SOUZA
By Their Attorneys
CLAUDE LEFEBVRE
CHRISTOPHER M. LEFEBVRE, P.C
/s/ Christopher M. Lefebvre #4019
Joseph E. Marran III #3971
P.O. Box 479
Pawtucket, RI 02862
Tel. (401) 728-6060
Fax. (401) 728-6534

**CERTIFICATION**

I hereby certify that on February 26, 2007, I electronically filed the within Plaintiffs' Pretrial Memorandum with the Clerk of the District Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically: Steven J. DeLuca, Esq. Shechtman, Halperin & Savage, LLP; and I hereby certify that I have mailed by United States Postal Service, postage pre-paid, the document and a copy of the Notice of Electronic Filing to the following non CM/ECF participants: None.

/s/Christopher M. Lefebvre