IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL SOUZA AND<br>ELIZABETH SOUZA | : | |
| | : | |
| VS. | : | CA. No. 0655 ML |
| | : | |
| DOMESTIC BANK | : | |

**MOTION IN LIMINI TO EXCLUDE EVIDENCE OF ALLEGED ACTUAL DAMAGES**

Now comes the Defendant, Domestic Bank (hereinafter "Defendant" or "Domestic") and moves that certain testimony and/or exhibits be excluded on grounds of relevance and prejudice. Defendant anticipates that the Plaintiffs will attempt to introduce, either by direct testimony, or by cross-examination, evidence that the Plaintiffs suffered actual damages, including out-of-pocket monetary losses and mental anguish as a result of the Defendant's conduct. However, based upon the Plaintiffs' pleadings and responses to discovery, including their answers to interrogatories and deposition testimony, the Plaintiffs cannot show that they suffered any actual damages as a result of Defendant's alleged violations of the Equal Credit Opportunity Act. The only evidence of actual damages alleged by the Plaintiffs is not causally related to the alleged violations and is otherwise irrelevant, speculative and prejudicial.

The Plaintiffs have brought this action under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, ("ECOA"), claiming two technical, not substantive, violations of the Act. Specifically, Plaintiffs claim that (1) Domestic did not provide notice of an "adverse action" within the required thirty days of receiving a completed application; and

(2) Domestic did not provide the actual or "specific reasons" for such adverse action as required by 15 U.S.C. § 1691(d)(1), (2) and (3) of the Act.[1]

Under the ECOA, "any creditor who fails to comply with any requirement imposed under this title shall be liable to the aggrieved applicant for any actual damages sustained by such applicant [...]" 15 U.S.C. § 1691e(a) (1976). Actual damages may include out-of-pocket monetary losses, injury to credit reputation and mental anguish, humiliation or embarrassment. *Anderson v. United Finance Company*, 666 F.2d 1274, 1277 (9th Cir. 1982). However, a Plaintiff must establish that any actual damages were proximately caused by the Defendant's violation of the ECOA. Furthermore, "the court will not presume any injury. The actual damages must be specifically proven." *Id.* at 1277-1278.

In section II of Plaintiffs' Settlement Conference Statement, which was filed on March 16, 2007, entitled "Itemized Statement of the Damages Claimed, And Of Any Other Relief Sought" the Plaintiffs, set forth their alleged damages as follows:

> **Plaintiff seeks actual damages in the amount of $225.00 representing their out-of-pocket damages for cost of an appraisal of their home which was required by Defendant bank as a necessary part of their loan application.** Plaintiffs also seek statutory punitive damages[2] in the amount of $10,000.00 for Defendant's wanton, malicious, oppressive and reckless disregard of the requirements of the Act. Plaintiffs also seek statutory interest, and costs of suit, including filing fees, service of process and Discovery costs and attorney's fees pursuant to the statute.

Plaintiffs' Settlement Conference Statement at p.3, attached as Exhibit A (emphasis added). By Plaintiffs' own admission, the only remaining allegation regarding actual

[1] Domestic will show at trial that it complied with the technical requirements of the Act and it is entitled to Judgment as a Matter of Law.

[2] Although the Plaintiffs are not entitled to any punitive damages, as they cannot show that Domestic's actions were "wanton, malicious, [or] oppressive", or that Domestic acted with "reckless disregard of the requirements of the Act", this motion is limited to actual damages. Similarly, Plaintiffs are not entitled to any attorney fees because they have suffered no damages.

damages is the $225.00 payment for the appraisal report.[3] However, in previously filed pleadings and answers to interrogatories, the Plaintiffs have alleged various other intangible damages including that they suffered emotional distress, marital discord, depression and a heart murmur, and had to sell their house etc. *See* Plaintiffs' Answers to Defendant's Interrogatories at No. 15. All testimony and other evidence of Plaintiffs' previously alleged intangible damages should be excluded from the trial, as the same is irrelevant and prejudicial.

Specifically, Defendant's Interrogatory No. 15 stated: "identify with particularity the damages that you allege you incurred, the cause of the alleged damages and the manner in which you calculated those damages." Plaintiff, Michael Souza's response regarding actual damages states:

> [...] Due to the fact that Domestic Bank cancelled the refinance, we were left with no option but to place our home on the market at a reduced price to make a quick sale. By not receiving the loan and the realization that the juggling both the mortgage and the Chapter 13 payments quickly became overwhelming and caused me to lose focus on my job duties. It also placed me into a state of depression that I do not wish on anyone. The stress of this put me and my wife into a constant state of arguments to the point that we did not speak for close to a month and we had to move our daughter, then age 8, and ourselves into a rental home temporarily, away from all of her friends and she did not understand why.

Plaintiff, Michael Souza's, Answers to Defendant's Interrogatories at No. 15, attached as Exhibit B. Similarly, Plaintiff, Elizabeth Souza's response to Interrogatory No. 15 regarding actual damages states:

> [...] They wasted our time and that of the bankruptcy court by providing us with a commitment letter and did not follow through. We put our home on the market immediately after not receiving the loan to pay off the Chapter 13 bankruptcy and get out of bankruptcy. We had to move our daughter, then age 8, and ourselves into a rental home temporarily, and the emotional distress was unbearable. I almost caused our marriage to end, put stress on our daughter and caused me to

[3] As discussed *infra*, the cost of the appraisal cannot constitute actual damages in this case.

> become physically ill. I developed a heart murmur from the stress and my husband went into depression.

Plaintiff, Elizabeth Souza's, Answers to Defendant's Interrogatories at No. 15, attached as Exhibit C. Similarly, in Plaintiffs' Pretrial Memorandum, which was filed on February 26, 2007, Plaintiffs state:

> Plaintiffs allege in their Complaint that Defendant misrepresented the actual reasons for the denial of Plaintiff's loan application in violation of ECOA. Plaintiffs further allege that Defendant's misrepresentation was done wantonly, maliciously, oppressively or in reckless disregard of the requirements of the law thus entitling Plaintiffs to the award of punitive damages. Finally, Plaintiffs allege that, as a result of Defendant's delay in providing the notice in the time frame mandated by 15 U.S.C. § 1691(d)(1), Plaintiffs were damaged in that their refinancing fell through, their bankruptcy case was converted to a Chapter 7 case[4] and their home which they had hoped to keep had to be sold to prevent foreclosure.

Plaintiffs' Pretrial Memorandum at 2-3, attached as Exhibit D (emphasis added). As Plaintiffs appear to acknowledge in their latest itemization of actual damages (i.e. in the Settlement Conference Statement), they are not entitled to damages that merely resulted from their general financial condition. The Plaintiffs have not alleged that Domestic breached any contract to provide them with a loan, or was otherwise required to give them a loan. Domestic had every right to deny the loan in question.[5] The Plaintiffs are not entitled to recover for injuries they may have suffered that are not causally related to the alleged violations of the ECOA. Specifically, any actual damages must be causally related to Domestic's alleged failure to notify them of an adverse action within thirty days of receiving a completed application. Alternatively, any actual damages must be

[4] The Plaintiffs' Chapter 13 bankruptcy was never converted to a Chapter 7.
[5] As discussed *infra*, at least 13 other lenders also denied the Plaintiffs a loan.

causally related to Domestic's alleged failure to provide the specific reasons for the denial.[6]

Plaintiffs cannot demonstrate that they suffered any actual damages as a result of Domestic's alleged failure to notify them of the adverse action within thirty days of receiving a completed application. First, as set forth more fully in Defendant's Pretrial Memorandum, the Plaintiffs will not be able to show that Domestic even violated the notice requirements of the Act. Pursuant to the ECOA, "[w]ithin 30 days [...] after receipt of a **completed application** for credit, a creditor shall notify the applicant of its action on the application." 15 U.S.C. § 1691 (d)(1), (emphasis added). The application is considered complete once a creditor has obtained all the information it normally considers in making a credit decision. Official Staff Commentary, 12 C.F.R. § 202.9(a)(1)-1. A creditor has latitude to establish its own application process and to decide the type and amount of information it will require from applicants. Official Staff Commentary, 12 C.F.R. § 202.2(f)-1.[7]

In the case at bar, as part of its application process, Domestic caused a second appraisal to be performed and required the Plaintiffs to provide building permits for renovation work done on their house. The Plaintiffs provided the requested documents

[6] As indicated above, based upon the Plaintiffs' Pretrial Memo, it appears that Plaintiffs' claim for actual damages is based upon Domestic's alleged "delay in providing the notice in the time frame mandated by 15 U.S.C. § 1691(d)(1) [...]." This is not surprising, as the Plaintiffs were fully aware of the reasons for the denial of the loan.

[7] A completed application is defined as an application "in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (including but not limited to credit reports, any additional information requested from the applicant, any approvals or reports by governmental agencies or other persons that are necessary to guarantee, insure, or provide security for the credit or collateral)." Reg.B, 12 C.F.R. § 202.2(f).

on January 8, 2004.[8] The notice of adverse action was forwarded on February 5, 2004, twenty eight (28) days from time the application was complete, and within the requirements of the ECOA. Therefore, Domestic will be entitled to a Judgment as a Matter of Law regarding this issue as the notice of adverse action was timely.

Second, even if there was a technical violation, (which there clearly was not), Plaintiffs cannot show that they suffered any damages as a result of the alleged late notice because none of the damages allegedly suffered by the Plaintiffs are causally related to the timing of the notice of denial.

The Plaintiffs testified that their marital discord, stress and depression were a result of their general financial problems that obviously preexisted their attempt to obtain a loan from Domestic. Michael Souza admitted that their financial problems caused them to file a chapter 7 bankruptcy in December of 1995 which caused stress in the marriage. (November 8, 2006, Deposition of Michael Souza ("M. Souza Dep.") at 17, attached as Exhibit E.) Michael admitted that he and his wife had marital discord during the filing of the Chapter 13 bankruptcy in May of 2003. "It was during the whole process. And then it just got to the point, like I said, I wouldn't even speak." *Id.* at 22. "When my wife told me that she had to contact our attorney to file is when it started, the arguments started." *Id.* at 23. Indeed, Michael testified that he and his wife had daily arguments about the finances that sometimes lasted until 4:00 in the morning. *Id.* at 24. "Right after the filing" of the Chapter 13 in May of 2003, the Plaintiffs stopped talking to each other. *Id.* at 28. When they were talking, they were arguing. *Id.* at 28. Likewise, Elizabeth Souza testified that she and her husband didn't speak for many months. (November 8, 2006,

---

[8] It is undisputed that a representative of Domestic conducted a second appraisal in January of 2004 and that Domestic required the Plaintiffs to forward copies of building permits on January 8, 2004. E. Souza Depo. at 49-53.

Deposition of Elizabeth Souza ("E. Souza Depo.") at 78, attached as Exhibit F.) Any stress[9] and marital discord was not caused by the timing of the notice of denial.

Regarding the allegations of depression and heart problems, Michael testified that his wife's heart palpation or murmurs may have gone back to the mid 1990's. M. Souza Depo. at 19-20. He admitted that his wife's heart murmur was probably diagnosed prior to any involvement with Domestic. *Id.* at 27. Michael admitted that he has never been treated for depression. *Id.* at 21. He testified that he took an anti-depressant briefly, as well as Advil for migraines *prior to* any involvement with Domestic. *Id.* at 26. The Plaintiffs have no reasonable expectation to show that their depression and heart condition were caused by the timing of the notice of denial.

Similarly, the fact that the Plaintiffs had to sell their house had nothing to do with the alleged technical violations of the ECOA. Elizabeth Souza testified that between the filing of the Chapter 13 bankruptcy in May of 2003 and the start of the Domestic application in November of 2003, she contacted eight to ten banks to try to get a consolidation loan to pay off the Chapter 13 bankruptcy debt. E. Souza Depo. at 14. She was unable to get approval from any of those eight to ten banks. *Id.* at 16. Elizabeth acknowledged that she didn't think Domestic would be able to help them because of their situation. *Id.* at 20. She was well aware that there was no guarantee that their loan application would be approved. *Id.* at 20-1. Subsequent to being denied by Domestic,

[9] Under Rhode Island law, "a plaintiff seeking to recover a monetary award for the tortious infliction of emotional distress must establish, among other elements, that he or she experienced physical symptoms of their alleged emotional distress, and that expert medical testimony is needed to support the existence of a causal relationship between the defendant's wrongful conduct and his or her claimed emotional distress." *Adams v. Uno Restaurants, Inc.*, 794 A.2d 489 (2002) *citing Swerdick v. Koch*, 721 A.2d. 849, 862-63 (R.I. 1998).

Elizabeth tried to obtain a loan from five additional lenders,[10] but was unsuccessful. *Id.* at 66. The Plaintiffs were unsuccessful in getting a loan from thirteen to fifteen other lenders both before and after trying to get a loan from Domestic. *Id.* at 68, 70. There is no causal relationship between the fact that the Plaintiffs had to sell their house and the timing of Domestic's notice of denial.[11]

Plaintiffs are not entitled to damages because they had to sell their home[12] and move into a rental home temporary. They are not entitled to compensation for preexisting marital discord, depression, or heart murmurs. Testimony regarding these matters is irrelevant and prejudicial.

Finally, as previously indicated, the Plaintiffs' itemization of damages in their Settlement Conference Statement limits the actual damages to "$225 representing their out-of-pocket damages for cost of an appraisal of their home which was required by Defendant bank as a necessary part of their loan application." Plaintiffs' Settlement Statement at p. 3. However, the Plaintiffs are not even entitled to recover the cost of the appraisal because there is no causal relationship between the alleged violations of the ECOA and the payment of the appraisal fee. The Plaintiffs did not incur the appraisal fee as a result of the timing of the adverse action or because the reasons specified in the notice of denial were inadequate in some way. The appraisal fee was a requirement to

[10] After being denied by Domestic, Elizabeth Souza "contacted Lending Tree, Ameriquest, South County Mortgage, North Star Mortgage, the Mortgage Store and others". (Plaintiff, Elizabeth Souza's Answers to Defendant's Interrogatories at Interrogatory No. 20.)

[11] Not only didn't the Plaintiffs suffer any actual damages, but it appears that the denial of the refinance allowed them to greatly improve their situation. They had no problem "immediately" selling their house on 98 Greenfield Avenue in Portsmouth for the full asking price. They were able to make a down payment of approximately $35,000.00 with the proceeds of the sale of their house. E. Souza Depo. at 8. They subsequently obtained a loan from Washington Mutual and purchased another (larger) house in August of 2004 located in Bristol.

[12] Moreover, Elizabeth Souza testified that they may have tried to sell the house before even applying for the Domestic loan. E. Souza Depo. at 74.

apply for the loan. There is no suggestion that Domestic was obligated under the ECOA to approve the loan. As previously indicated, the Plaintiffs have not alleged that Domestic breached any contract to provide them with a loan, or was otherwise required to give them a loan. Domestic had every right, like the twelve or fourteen other lenders, to deny the loan in question. There is no suggestion that Domestic accepted the Plaintiffs' application in bad faith. There is no suggestion that Domestic benefited in any way by having to go through the loan application process. Domestic is in the business of making loans. There is no causal relationship between the alleged violations of the ECOA and the Plaintiffs' payment of the $225.00 appraisal fee to a third party. Therefore, the Plaintiffs are not entitled to claim that the payment constitutes actual damages under the ECOA.

## CONCLUSION

For all the foregoing reasons, the Court should exclude any evidence of alleged actual damages, including but not limited to testimony and other evidence of alleged emotional distress, marital discord, stress, depression, heart murmurs, the "forced" sale of the house, as well as the payment of a $225.00 appraisal fee.

Respectfully submitted,

Defendant,
DOMESTIC BANK
By its attorneys:

*<u>/s/ Dean J. Wagner</u>*
Dean J. Wagner, Esquire, #5426
SHECHTMAN HALPERIN SAVAGE, LLP
1080 Main Street
Pawtucket, RI 02860
(401) 272-1400 Telephone
(401) 272-1403 Facsimile

Dated: March 20, 2007

**<u>CERTIFICATE OF SERVICE</u>**

***I HEREBY CERTIFY*** that on this 20th day of March, 2007, a true copy of the within Motion In Limini was served via electronic mail to the following counsel of record:

Christopher M. Lefebvre
Joseph E. Marran, III, Esquire
Law Offices of Claude Lefebvre & Sons
P.O. Box 479
Pawtucket, RI 02862

*<u>/s/ Dean J. Wagner</u>*